UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| JOE AL LEDESMA, # 477070, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:06-cv-759 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| CAROL HOWES, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| _____ | ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C.

§ 2254.  Petitioner is serving a sentence of 5 years, 10 months to 22 years, 6 months, imposed on

December 8, 2003, by the Wexford County Circuit Court after petitioner entered a plea of *nolo*

*contendere* to a charge of unarmed robbery.  The maximum sentence was enhanced by a finding that

petitioner was a second-felony offender.  Petitioner's *nolo contendere* plea was entered pursuant to

a plea agreement, under which the prosecution dropped a more serious charge of armed robbery and

agreed that petitioner would be sentenced as a second-felony offender, rather than a third-felony

offender.  The *pro se* petition does not challenge the validity of petitioner's conviction or *nolo*

*contendere* plea.  Rather, petitioner raises three challenges to his sentence:

I.      The trial court violated petitioner's Sixth Amendment rights when it

assessed 10 points under the state sentencing guidelines for petitioner's position as

a "leader" on the basis of judicial fact-finding.

II.     Petitioner's trial counsel was ineffective for failing to object to the assessment of 10 points under the state sentencing guidelines based on a finding that there were more than two victims of the offense.

III.    Petitioner's counsel was ineffective for failing to argue at sentencing that petitioner should have been sentenced at the lower end of the guideline range.

Respondent has filed an answer to the petition, accompanied by the state trial court and appellate records.  Chief Judge Robert Holmes has referred this matter to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Habeas Corpus Proceedings in the District Courts.  Upon review of the record and the submissions of the parties, I conclude that petitioner is not entitled to habeas corpus relief.

## **Proposed Findings of Fact**

**A.     Trial Court Proceedings**

The state-court prosecution arose from a robbery that occurred on August 21, 2003, in the City of Mesick, Michigan.  Petitioner and Karyn Malloy collaborated in robbing a cashier at the Mesick E-Z Mart, which was attached to an Amoco gas station.  Ms. Malloy entered the store to see who was there.  She then returned to the car to act as lookout.  Petitioner entered the store at approximately 9:15 p.m.  He had in his pocket a wooden dowel.  He was dressed in black with his face blackened to impede identification, had a hood over his head, and was wearing rubber gloves. He approached the counter clerk with his right hand in his pocket, in an apparent effort to create the impression that he had a gun.  Petitioner demanded money and threatened to kill the clerk.  A second clerk was towards the rear of the store.

A customer entered the store and, upon realizing that petitioner was robbing the clerk, grabbed him from behind and threw him to the floor. A second male customer entered and helped to restrain petitioner until an officer arrived and placed him under arrest. The officer found Ms. Malloy in the passenger seat of a car outside the door.

The Wexford County prosecutor charged petitioner with armed robbery, MICH. COMP. LAWS § 750.529, an offense punishable by imprisonment for any term of years up to life. The Information also notified petitioner that upon conviction he faced sentencing under the habitual offender law, MICH. COMP. LAWS § 769.11, as a third-felony offender. Petitioner's habitual offender status arose from previous convictions for attempted murder (for which he had recently served 13 years in prison) and larceny from a building.

Petitioner and counsel appeared before the circuit judge on November 3, 2003, for purposes of entering a plea of *nolo contendere* pursuant to a plea agreement. (*See* Plea Transcript (PT), docket # 11). At the outset of the proceeding, the prosecutor set forth the terms of the plea agreement, under which petitioner would plead no contest to a reduced charge of unarmed robbery and to being a second-felony offender, in exchange for the prosecution's agreement to dismiss the armed robbery charge and the third-felony offender specification. The effect of this agreement was to reduce petitioner's exposure from a maximum of life imprisonment to a maximum of 22½ years' imprisonment, as unarmed robbery is punishable by 15 years in prison, and the second-felony offender specification, under MICH. COMP. LAWS § 769.10, provided for a maximum sentence of one-and-a-half times that provided for the underlying felony. The court explained to petitioner the new, reduced statutory maximum he faced as a result of the plea agreement. (PT 4). The court then engaged in a careful plea-taking colloquy to establish the knowing and voluntary nature of the *nolo*

*contendere* plea.  (PT 5-9).  The court again returned to the terms of the plea agreement to assure itself that petitioner understood the maximum penalties and the fact that he faced sentencing as a second-felony habitual offender.  (PT 9-10).  Petitioner then entered a plea of *nolo contendere* to the unarmed robbery charge and admitted to being a second-felony offender.  (PT 11).  The court supplied the factual basis for the plea by reference to police reports.  (PT 13-14).  At the end of the plea proceeding, defense counsel asked for a transcript of the plea proceeding for co-defendant Karyn Malloy, indicating that "part of her plea agreement was that she testify if need be against Mr. Ledesma."  (PT 14).  Defense counsel indicated his anticipation that, because of Malloy's testimony, petitioner "may score out as a leader under the guidelines."  (*Id.*).  The court allowed the request.

Petitioner and counsel appeared before the circuit court on December 8, 2003, for purposes of sentencing.  (*See* Sentencing Transcript (ST), docket # 12).  The court indicated at the outset of the hearing that the corrected guideline range, which established the presumptive range for a minimum sentence, was 29-to-71 months.  (ST 2).  Defense counsel asked for minor factual changes in the presentence report, which the court granted.  (ST 2-4).  Defense counsel indicated that he had no other objections concerning the content of the presentence report.[1]  When given an opportunity for allocution, defense counsel indicated that the recommendation of a minimum sentence of 60 months by the probation office is "probably fair given the defendant's culpability in this."  (ST 4).  He noted the lack of support or structure after petitioner had been released from prison and asked that the court "consider something less than the 60 months recommended," as a minimum sentence. (ST 5).  The prosecutor, emphasizing the impact on the victims and petitioner's

---

[1]  The presentence report, as anticipated, had assessed points against petitioner for his leadership role in the offense, as well as for placing in danger of injury two or more victims.

substantial criminal history, asked the court to impose a minimum sentence at the top end of the range, 71 months. (ST 5-6). Petitioner delivered a long and detailed allocution. He began by apologizing to the victims, including the two women employees and the two men who apprehended him at the scene. (ST 6). Petitioner apologized to his family and to his co-defendant Malloy, stating "I am sorry she had to be involved in this, Your Honor, and thank the Court for his leniency with her." (ST 7). Petitioner acknowledged that he had committed a "very very bad crime" only a short time after he had been released from thirteen years of incarceration in Tennessee for attempted murder. (ST 7). He spoke of his past problems with drugs and alcohol as well as his emotional problems. (ST 8-9). Petitioner blamed his conduct on post-traumatic stress disorder but admitted that what he did was "stupid, real stupid." (ST 9). He begged the court for leniency. (ST 10-11).

The court then imposed sentence. The court acknowledged its discretion to impose either a maximum of 15 years' imprisonment or of 22½ years, as petitioner had admitted being a second-felony habitual offender. In light of petitioner's previous record and the fact that he committed this crime only five months after being discharged from prison, the court determined that the statutory goals of sentencing required imposition of a 22½-year maximum sentence under the habitual offender statute. (ST 11-12). The court further determined that it would set the minimum sentence within the guideline range, "near the top," but that the court would not exceed the guidelines. (ST 12). The court then imposed sentence of a minimum of 70 months (5 years, 10 months) and a maximum of 22½ years. (ST 12-13).

The court appointed counsel to represent petitioner for purposes of pursuing a discretionary appeal to the Michigan Court of Appeals. On January 10, 2005, appellate counsel and petitioner appeared before the court on petitioner's motion for resentencing. The motion,

-5-

accompanied by affidavits and other documents, challenged the sentencing judge's assessment of 10 points under the state sentencing guidelines under offense variable 14, for petitioner's leadership role in the offense.  Appellate counsel argued that petitioner should not have been deemed a leader, but that he and Ms. Malloy were involved in a "joint enterprise" in which their guilt was that of "co-equals."  (*See* Motion Transcript (MT) at 3-4, docket # 13).  The prosecutor emphasized that Ms. Malloy was only the lookout person who was an aider and abetter in the armed robbery.  (MT 7). "But the defendant in this case was the one who went in with his face painted, with his image obscured so that he would avoid detection, who fashioned what I think was a chair leg in the manner of a gun, confronted a clerk, said this wasn't a joke, this is really a robbery, and said if you don't comply I'm going to kill you or you're going to be dead."  (*Id.*).  The prosecutor argued that petitioner was guilty of being the moving party in the crime and that under the circumstances he was the leader of the robbery.  (MT 8).

After argument, the court indicated that at the time of the original sentencing, it had consulted the plea transcript of Ms. Malloy, who indicated that petitioner was the one who wished to carry out the robbery, that he did not tell her of his intent to use a weapon, and that her only job was to go into the store and check out who was there before petitioner entered to commit the robbery. (MT 11-13).  The court also indicated its previous reliance on the sheriff's department report, which indicated that petitioner told officers that the idea to commit the robbery was his.  (MT 13).  The court indicated that the version of facts presented to him at the time of the sentencing was more credible than  the after-the-fact efforts of petitioner and Malloy to minimize petitioner's role.  (MT 13-14).

B.       **Appellate Proceedings**

Petitioner, represented by appointed appellate counsel, applied for leave to appeal to the Michigan Court of Appeals.  Counsel's application raised two challenges to the sentence.  The first alleged that the court clearly erred in finding that petitioner was the leader for purposes of assessing 10 points under offense variable 14.  The second issue raised a Sixth Amendment claim arising from judicial fact-finding on this point.  On April 18, 2005, the state Court of Appeals denied leave to appeal for lack of merit in the ground presented.  Counsel then filed a motion for reconsideration, seeking leave to amend the application for leave to appeal with three further challenges to sentencing, raised by petitioner in a *pro se* brief.  By order entered May 25, 2005, the court denied the motion for reconsideration.  (*See* Michigan Court of Appeals record, docket # 14).  Petitioner filed a *pro se* application for leave to appeal to the state Supreme Court, seeking to raise all five issues asserted in the state Court of Appeals.  By standard order issued October 31, 2005, the Michigan Supreme Court denied leave to appeal.  (*See* Michigan Supreme Court record, docket # 15).

On October 23, 2006, petitioner filed the present habeas corpus action.

**Applicable Standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 126 S. Ct. 2862 (June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature

-7-

of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *See Williams*, 529 U.S. at 381 ("If this court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish a principle with sufficient clarity to satisfy the AEDPA bar."); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final."  *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see Spisiak v. Mitchell*, 465 F.3d 684, 690 (6th Cir. 2006).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a

different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply.  *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Williams*, 529 U.S. at 410.  Objective reasonableness is "a substantially higher threshold."  *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939 (2007).

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented.  *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).  Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*.  *Onifer*, 255 F.3d at 316.  The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *Harris*, 212 F.3d at 943.  However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer."  In such circumstances, the court conducts *de*

*novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Nields v. Bradshaw*, 482 F.3d 442, 449-50 (6th Cir. 2007); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *See Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir. 2007); *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Haliym v. Mitchell*, 492 F.3d 680, 690 (6th Cir. 2007); *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

## Discussion

The habeas corpus petition raises three challenges to petitioner's sentence. Because the state Court of Appeals denied leave to appeal "for lack of merit in the grounds presented," its decision must be deemed as one on the merits of petitioner's claims. Review in this court is therefore governed by the deferential AEDPA standard, which asks whether the state court decision was contrary to, or represented an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

## I.

Petitioner's first ground for habeas corpus relief is that the trial court's assessment of 10 points under offense variable 14, based upon a finding that petitioner had a leadership role in the offense, violated petitioner's Sixth Amendment rights. This claim, as well as petitioner's second and third claims, requires an understanding of Michigan's indeterminate sentencing system.

When imposing a sentence under Michigan law, a trial court sets a maximum and minimum sentence. The maximum sentence is established by statute. *See* MICH. COMP. LAWS § 769.8(1). Except in the case of habitual offenders, the maximum sentence established by statute is not subject to modification by the sentencing judge. The judge's only discretion is in setting the minimum sentence. In setting a minimum sentence, the sentencing court must consult statutory sentencing guidelines, which establish a range for the minimum sentence. *See* MICH. COMP. LAWS § 769.34(2). The sentencing court determines a defendant's minimum sentence by considering the offense class, offense variables, and other factors prescribed by statute. Generally, once the sentencing court calculates the defendant's guideline range, it must impose a minimum sentence within that range, absent "substantial and compelling reasons." MICH. COMP. LAWS § 769.34(3). *See generally People v. McCullar*, 479 Mich. 672, 2007 WL 2141267, at * 4 (Mich. July 26, 2007).

One of the offense variables (OV) that the sentencing court must consider is OV 14, the defendant's role in the offense. MICH. COMP. LAWS § 777.44. If the defendant was a "leader in a multiple offender situation," the sentencing court adds 10 points to the guidelines. In the present case, the presentence report suggested assessment of 10 points under OV 14 for petitioner's leadership role in the offense. The trial court accepted this recommendation without objection from defense counsel. One year later, appellate counsel moved for resentencing, arguing that the

-11-

assessment of 10 points for petitioner's alleged leadership role was in error.  The sentencing judge denied the motion, finding that the information before him at the time of sentencing supported a finding that petitioner was the leader in the robbery, and that the subsequent affidavits were not credible.

Habeas corpus relief is available to a state prisoner only on the ground that he is in custody in violation of the federal Constitution or laws.  28 U.S.C. § 2254(a).  It is not the province of a federal habeas court "to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  A habeas corpus claim that the state trial court incorrectly scored or calculated a sentencing guideline range under the Michigan sentencing guidelines is therefore not a cognizable claim for habeas corpus review, because it is a state-law claim.  *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).  "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence."  *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005).  Petitioner's claim that OV 14 was incorrectly scored under the state sentencing guidelines therefore fails to state a claim upon which habeas relief can be granted.  *Id.*

Petitioner further claims, however, that his Sixth Amendment rights were violated when the trial court made a factual determination of petitioner's leadership role.  Petitioner's Sixth Amendment claim is rooted in a line of Supreme Court cases, beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2002).  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In that case, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  In the subsequent case

of *Blakely v. Washington*, 542 U.S. 296 (2004), the Court applied the rule of *Apprendi* to the Washington state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth Amendment, and reiterated the rule that any fact that increases the maximum sentence must be admitted by the defendant or proved to a jury beyond a reasonable doubt.  542 U.S. at 308; *accord Rita v. United States*, 127 S. Ct. 2456, 2466 (2007); *United States v. Booker*, 543 U.S. 220, 244 (2005).  Most recently, the Court struck down California's determinate sentencing law, which allowed the sentencing court  to make factual findings exposing a defendant to an elevated upper term of incarceration.  *Cunningham v. California*, 127 S. Ct. 856, 871 (2007).

Petitioner challenges his sentence under *Apprendi* and its progeny, arguing that his sentence could not be enhanced by a judge-made factual finding on OV 14, and that such findings can only be based on a jury verdict or a criminal defendant's admission.  Petitioner's argument fails to distinguish between determinate sentencing schemes (such as those found unconstitutional in the States of Washington and California) and indeterminate sentencing schemes (such as those employed in Michigan).  The *Blakely* Court itself made the distinction:

> Justice O'Connor argues that, because determinate-sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former.  This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power.  It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.  *Indeterminate sentencing does not do so.*  It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty.  Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence- and that makes all the difference insofar as judicial impingement upon the traditional

> role of the jury is concerned.  In a system that says the judge may punish burglary with 10-to-40 years, every burglar knows he is risking 40 years in jail.  In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Blakely*, 542 U.S. at 308-09 (citations omitted, emphasis added).  Under the clear holding of *Blakely*, indeterminate sentencing does not implicate the Sixth Amendment right to trial by jury, because the maximum sentence is fixed by law and not by judicial factfinding.  Likewise, in its recent *Cunningham* decision, the Court distinguished between the former indeterminate sentencing system employed in California and the determinate system found to be in violation of the Sixth Amendment. 127 S. Ct. at 861-62.

Unlike the determinate systems found to be unconstitutional in Washington and California, the State of Michigan has an indeterminate sentencing system in which the defendant is given a minimum and a maximum term.  The maximum sentence is not determined by the trial judge, but is set by law.  *See People v. Drohan*, 715 N.W.2d 778, 781-91 (Mich. 2006).[2] Consequently, the trial court's guideline scoring in this case (or any other case, for that matter) can affect only the minimum sentence, never the maximum.  On this basis, the Michigan Supreme Court has held that the Michigan indeterminate sentencing system does not run afoul of the rule enunciated in *Apprendi* and *Blakely*.  *Drohan*, 715 N.W.2d at 789-91.  More recently, the state Supreme Court

---

[2] The only circumstance in which the trial court may increase the maximum sentence is if petitioner is found to be an habitual offender.  This does not contravene the Sixth Amendment, as the *Apprendi* Court specifically carved out an exception for the "fact of a prior conviction," which need not be determined by a jury.  *Apprendi*, 530 U.S. at 490.  In all events, the enhancement of petitioner's maximum sentence in the present case cannot possibly violate the rule of *Apprendi*, as petitioner admitted under oath his habitual offender status.  (PT 11).  Petitioner does not challenge the enhancement of his sentence under the habitual offender law.

examined its sentencing system in light of *Cunningham*, again finding no violation of Sixth Amendment rights.  *People v. McCullar*, 479 Mich. 672 (2007).  In numerous decisions, both this court and the United States District Court for the Eastern District of Michigan have examined the question, finding in each case that judicial factfinding for purposes of setting the minimum sentence under Michigan's indeterminate sentencing system does not violate Fourteenth or Sixth Amendment rights.  *See, e.g., Delavern v. Harry*, No. 1:07-cv-13293, 2007 WL 2652603, at * 3-4 (E.D. Mich. Sept. 7, 2007); *Morgan v. Birkett*, No. 2:07-cv-12396, 2007 WL 2318751, at * 2 (E.D. Mich. Aug. 9, 2007); *Hart v. Berghuis*, No. 1:07-cv-476, 2007 WL 2159394, at * 2 (W.D. Mich. July 25, 2007); *Jones v. Trombley*, No. 2:07-cv-10139, at * 3 (E.D. Mich. Jan. 31, 2007); *Gray v. Bell,* No. 1:06-cv-611, 2007 WL 172519, at *3 (W.D. Mich. Jan.19, 2007);  *Mays v. Trombley*, No. 2:06-cv-14043, 2006 WL 3104656, at * 3 (E.D. Mich. Oct. 31, 2006); *Worley v. Palmer*, No. 2:06-cv-13467, 2006 WL 2347615, * 2 (E.D. Mich. Aug. 11, 2006); *Pettiway v. Palmer,* No. 1:06-cv-132, 2006 WL 1430062, at *1 (W.D. Mich. May 23, 2006); *Stanley v. Jones*, No. 1:06-cv-49, 2006 WL 1459832, at *2 (W.D. Mich. May 23, 2006); *George v. Burt,* No. 2:04-cv-74968, 2006 WL 156396, at *5 (E.D. Mich. Jan. 20, 2006); *Walton v. McKee,* No. 2:04-cv-73695, 2005 WL 1343060, at *3 (E.D. Mich. June 1, 2005).

    In summary, the trial court's scoring of offense variable 14 in the present case affected only petitioner's minimum sentence and had no effect on the maximum term.  Petitioner's Sixth Amendment claim based on *Apprendi* and its progeny is therefore meritless.

## II.

Petitioner's second habeas corpus claim charges his trial counsel with ineffective assistance, arising from counsel's failure to object to the assessment of 10 points under offense variable 9.  Under the Michigan sentencing statute in effect at the time of the offense, the sentencing court was directed to assign 10 points in any case in which there were "two to nine victims."  MICH. COMP. LAWS § 777.39(1).  The statute directs the sentencing court to count "each person who was placed in danger of injury or loss of life as a victim."  *Id.* at § 777.39(2)(a).  Petitioner asserts that his counsel was ineffective for failing to object to the assessment of 10 points under offense variable 9 at the time of sentencing.  Petitioner now argues that only one victim, the cashier behind the counter, should have been counted and that counsel was constitutionally ineffective for failing to object.

Again, the underlying question whether the trial court correctly scored this offense variable for purposes of state sentencing guidelines is a state-law claim that is not reviewable in habeas corpus.  I note, however, that petitioner's appellate brief raised this state-law claim, as well as a Sixth Amendment claim.  Petitioner's *pro se* brief (found in the state Court of Appeals record, docket # 14) asserted that the finding of the trial court should be reversed for clear error.  The state Court of Appeals rejected that claim on its merits.  *Accord People v. Morson*, 685 N.W.2d 203, 210 (Mich. 2004) ("Pursuant to the plain language of the statute, the sentencing court is to count 'each person who was placed in danger of injury or loss of life' as a victim.").  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  This

-16-

court is therefore bound, in assessing petitioner's claim of ineffective assistance of counsel, to conclude that the assessment of 10 points under OV 9 was not clear error.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test by which to evaluate claims of ineffective assistance of counsel. To obtain reversal of a conviction, a petitioner must prove both that counsel's performance fell below an objective standard of reasonableness and was not sound legal strategy and that counsel's deficient performance prejudiced petitioner, resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687-88. On the performance prong, the court must indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct." *Id.* at 689. In making this determination, the court must consider the totality of the circumstances and should not focus on particular acts or omissions in isolation. 466 U.S. at 690; *see Mason v. Mitchell*, 320 F.3d 604, 618 (6th Cir. 2003). On the prejudice prong, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Petitioner must "show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As the Michigan Court of Appeals directly considered this claim of ineffective assistance of counsel, that court's determination is entitled to deference under AEDPA. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state court decision applied *Strickland* incorrectly. "Rather, he must show that the [ ] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." 535 U.S. at 699. Thus, AEDPA creates a "high

-17-

burden" for petitioner to satisfy. *Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 955 (2007).

In applying the performance prong of the *Strickland* standard, the federal courts have repeatedly held that trial counsel is not ineffective for failure to raise a plainly meritless or futile objection. *See, e.g., United States v. Martin*, 45 F. App'x 378, 381-82 (6th Cir. 2002) ("Failure of trial counsel to raise wholly meritless claims cannot be ineffective assistance of counsel."); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2001); *Lyons v. Caruso*, No. 98-1986, 1999 WL 1252916, at * 3 (6th Cir. Dec. 14, 1999) ("[C]ounsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance."). "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). In the present case, the statute requires assessment of 10 points of the court finds that the defendant placed in danger of injury or loss of life two to nine persons. Petitioner now admits that the counter clerk qualifies as a victim under this definition. At the time of sentencing, petitioner also admitted that the second clerk was a victim as well.

> I would like to start by apologizing to the victims in this case, Your Honor, in which there are so many.
>
> First, to the two women behind the counter working that night, Ms. Hunget and Ms. Flynn, I am so, so sorry. I'm sorry if I scared you or put fear into your hearts and lives.

(ST 6). Additionally, petitioner apologized to the two men who apprehended him at the scene, indicating that he was "sorry if you felt your lives were in jeopardy at any point in this." (*Id.*). It is eminently foreseeable to a person committing a robbery at a public place that bystanders may come to the rescue of the robbery victim, as happened in this case. Both of the rescuers were certainly

-18-

subjected to possible injury in their attempts to prevent the crime.  Apparently, petitioner realized this fact at the time of sentencing, but has since been induced to forget it.

Defense counsel's decision not to object to the assessment of 10 points under OV 9 cannot be deemed deficient or objectively unreasonable in the circumstances of this case. Both the cashier and the two citizens who engaged in a physical altercation with petitioner were clearly placed in danger of injury by petitioner's criminal act.  An objection to this finding would have been futile. Petitioner's claim of ineffective assistance of counsel must therefore fail.

### III.

Petitioner's final claim is that his counsel was constitutionally ineffective at sentencing for two reasons.  First, he asserts that counsel failed to investigate and present to the court evidence of petitioner's history of mental illness and the effect of his anti-psychotic drugs.  Second, he asserts that counsel should have argued for a minimum sentence at the bottom of the state advisory guideline range.  Neither claim withstands scrutiny.

Petitioner's first claim is that counsel was constitutionally ineffective for failing to investigate and present to the court evidence of petitioner's medical history and history of mental illness.  It is clear, however, that the court was at least generally aware of petitioner's history, as petitioner himself informed the court that he had developed traumatic stress disorder while serving a 13-year prison sentence in Tennessee for attempted murder.  He told the court that he suffered from depression, anxiety and insomnia and that he had been on medication since the early 1990's.  "I have a highly compulsive, addictive personality and I have abused drugs in the past."  (ST 7-8).  He also

informed the court of the effects of the prescription medication that he was taking at or around the time of the offense.  (ST 9-11).[3]

As noted above, petitioner must base his habeas corpus claims on the holdings of the United States Supreme Court.  The Court has held, in the context of capital sentencing, that the Constitution imposes upon counsel a duty to investigate a defendant's background in preparation for the sentencing phase of a capital trial.  *See, e.g., Williams v. Taylor*, 529 U.S. 362, 396 (2000).  The Sixth Circuit has labeled this duty "well established," noting that it arises from the life-or-death consequences faced by a defendant in a capital trial.  *See Harries v. Bell*, 417 F.3d 631, 637-38 (6th Cir. 2005).  The Supreme Court, however, has never extended this constitutional duty of thorough investigation to non-capital sentencing.  To be sure, the general requirements of *Strickland v. Washington* apply at all sentencings, and the lower courts have so held.  *See, e.g., Arredondo v. Untied States*, 178 F.3d 778, 783 (6th Cir. 1999).  The Supreme Court itself, however, has never clearly established the contours of the duty to investigate in the context of non-capital sentencing.  There is no reason to believe that the Court would require the same thorough investigation of a defendant's background in a sentencing for unarmed robbery that it would demand in a sentencing for capital murder.

Assuming that the Sixth Amendment requires defense counsel to discover and raise relevant and important mitigating circumstances in a non-capital sentencing proceeding, petitioner cannot show a reasonable probability that this omission prejudiced the outcome of the proceedings.

---

[3] In his brief to this court, petitioner now claims that a proper investigation of his medical history would have led to an acquittal on grounds of insanity:  "This would have shown that, due to the lack of psychotic medications, Petitioner was not responsible for the crime he committed, and pled to."  (Brief at 19, docket # 2).  This new-found insanity defense was not exhausted in the state trial or appellate courts and is not properly before this court.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In the present case, the court was aware, from petitioner's own allocution, of his history of mental instability and his problems with medication.  Petitioner has not demonstrated what, if any, further information counsel could have provided.  Despite the sentencing judge's knowledge of these issues, the judge decided to impose a minimum sentence near the top of the guideline range.

Finally, petitioner's argument that counsel should have argued for a minimum sentence towards the bottom of the guideline range borders on the ridiculous.  The Supreme Court has made it clear that counsel's performance must be judged in its totality.  Here, counsel was successful in reducing petitioner's maximum exposure from life imprisonment to 22½ years by getting the charge reduced from armed to unarmed robbery.  Furthermore, counsel was successful in having the prosecutor agree to treat petitioner as only a second-felony offender.  These concessions by the prosecution must be deemed significant.  Petitioner had absolutely no defense to the armed robbery charge nor to the original habitual offender specification.  In negotiating the plea agreement, defense counsel accomplished for petitioner more than any criminal defendant had a right to expect in the circumstances.  When addressing the appropriate minimum sentence, counsel did ask the court to impose a sentence below the 60-month minimum suggested by the presentence report.  (ST 5) ("[W]e would ask you to consider something less than the 60 months recommended.").  Despite this recommendation, the court imposed a 70-month minimum, only one month below the top of the guideline.  As the sentencing judge refused to go below 60 months, as recommended by defense counsel, there is absolutely no possibility that he would have imposed a sentence at the bottom of the guideline, if he had been requested to do so.  Furthermore, it is

-21-

inconceivable that a circuit judge would impose a 2½-year minimum sentence on a defendant in petitioner's circumstance, who had three major felonies on his record and had recently finished a 13-year sentence for attempted murder.  In these circumstances, petitioner cannot show any possibility, let alone a reasonable probability, that his sentence was affected by anything that his counsel said or did not say at the time of sentencing.  The court's explanation of its sentence leaves no doubt that its decision was driven by petitioner's very serious criminal record and the need to protect the public from him.  (ST 12).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.

Dated:   September 27, 2007          /s/  Joseph G. Scoville
                                     United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).